# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Sutherland*, 2013 IL App (1st) 113072

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM SUTHERLAND, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-11-3072 |
| Filed<br>Rehearing denied | June 28, 2013<br>August 13, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of defendant's motion for leave to file a successive postconviction petition alleging ineffective assistance of his trial and appellate counsel was upheld over defendant's contention that his failure to show cause for his failure to raise the issue in his first postconviction proceedings should be excused because he was not represented by counsel during the first-stage proceedings, since defendant failed to show that the claim of ineffective assistance had any arguable basis and thereby was unable to satisfy the cause-and-prejudice standard for obtaining leave to file a successive petition. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 97-CR-12507; the Hon. Clayton J. Crane, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Patrick F. Cassidy, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Joan F. Frazier, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE LAVIN delivered the judgment of the court, with opinion.

Justices Epstein and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant William Sutherland appeals from the denial of his *pro se* request to file a successive postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2010)). On appeal, he argues that under the United States Supreme Court's recent case, *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309 (2012), his failure to raise an ineffective assistance of trial counsel claim in his initial postconviction petition should be excused because he did not have the aid of legal counsel in drafting the petition. He contends that fact, plus the alleged prejudice, warrants reversal of the circuit court judgment. We affirm.

¶ 2                                    BACKGROUND

¶ 3    In August 1998, defendant was tried and convicted by a jury for the 1997 attempted murder of his former wife, Elaine Sutherland, and his stepdaughter, Erica Ellison. He was also convicted of home invasion. Trial evidence showed that following domestic abuse incidents, Elaine asked for a divorce, and defendant responded with a "threatening okay." Around 11 p.m. that same evening, defendant burst into the room where Elaine and Erica were sleeping, turned on the light, then shot Elaine numerous times, in her forearm, chin, jaw, shoulder, and chest, and also shot five-year-old Erica in the face above her lip. Both victims survived. Elaine suffered permanent brain damage, including retrograde amnesia, as a result of the gunshot wounds but was able to testify at trial, albeit without any recollection of the shootings. Defendant's conviction therefore rested on the identification testimony of Erica, who was a six-year-old at the time of trial. Erica testified that she watched as defendant shot her mother, "bam, bam, bam, bam," forcing her to fall off the bed onto the floor before defendant turned the weapon on her. Erica knew it was defendant because she saw his face and saw he was wearing glasses. A neighbor who entered moments after the shooting testified that Erica's exact words were, "Will done shot us." Police were radioed to the scene around 11:20 p.m. Erica told three police officers that defendant shot her. She

-2-

identified him in photographs then and later identified him in court at trial.

¶ 4 The State also presented the testimony of another neighbor who saw a six-foot man, sporting glasses, a chin beard, and bearing a "crazy look," digging inside his car trunk outside Elaine's home around 10:30 p.m. on the evening in question; he walked up to the porch, turned around, looked at the neighbor, then returned to his car and eventually drove off. She later identified him as defendant. The State posited that defendant returned to Elaine's home and committed the shooting about 11 p.m., leaving behind what the evidence technician later determined was a .22-caliber bullet. A search inside defendant's trunk revealed there was a winter mask with the eyes cut out, even though it was April, and rubber hospital gloves.

¶ 5 Defendant's theory of defense was misidentification. He argued that when Erica said her "daddy" was the shooter, she was referring to her biological father, even though she clarified to police officers that she was referring to "Will." Testifying on his own behalf, defendant admitted that on the evening in question he, along with his three-year-old son by Elaine, was momentarily present outside Elaine's home somewhere between 9 p.m. and 10 p.m., but denied entering the home or shooting Elaine and Erica. After knocking on the window of Elaine's home and receiving no answer, he claimed to have driven to his father's house, which was 10 to 15 minutes away. He was there but five minutes because he found his father was either drunk or asleep. He then left and returned to a family party. A former state correctional officer himself, defendant admitted having owned a .22-caliber pistol, although he denied owning one at the time of the shooting. At 6 feet and 3 inches, he also admittedly wore glasses and a chin beard at the time of the crime and at trial.

¶ 6 Six witnesses testified to either defendant's whereabouts on the evening in question or to his peaceful reputation. Defendant's cousin, for example, testified he left the family party around 9:40 p.m. and returned some time later, but she was not sure when; defendant's sister gave similar testimony but added that defendant returned to the house shortly after 11 p.m.; defendant's other sister testified that she was at the party but unaware of defendant's presence or absence; finally, an acquaintance at the party testified that defendant left about 10 p.m. and returned by about 10:30 p.m., but her watch was also broken. A seventh defense witness, Elaine's neighbor, testified that she saw a car she recognized as defendant's parked outside Elaine's home about 10:30 p.m., but it was gone within 15 minutes; she saw flashing police lights about 11:20 p.m. An eighth defense witness testified she saw a man who was not defendant running near the crime scene but did not get a good look at him because she thought he had a gun. Initially, she testified this was around 11 p.m. or 11:30 p.m., but then said it was around 10:30 p.m. or 11 p.m., noting she did not have a watch.

¶ 7 The jury credited the State's witnesses over the defense and determined defendant was guilty as charged. Defendant was sentenced to consecutive terms of 30 years' imprisonment for the attempted murders of Elaine and Erica, as well as 30 years' imprisonment for home invasion, resulting in a total 90-year prison term with the lesser charges merging.

¶ 8 Defendant filed a direct appeal raising a number of contentions, none of which related to trial counsel's effectiveness. This court affirmed defendant's convictions and sentence. *People v. Sutherland*, 317 Ill. App. 3d 1117 (2000), *appeal denied*, 195 Ill. 2d 594 (2001)

(table), *cert. denied*, 534 U.S. 1105 (2002).

¶ 9        In 2001, defendant, acting *pro se*, filed his first postconviction petition under the Act. He argued that perjured testimony had been introduced at trial, certain witnesses were not adequately impeached, he was denied the right to cross-examine Erica at the competency hearing and to present a defense, and the prosecutor committed misconduct. Defendant claimed that trial and/or appellate counsel was ineffective for these shortcomings. Notably, in the context of his prosecutorial misconduct claim, defendant asserted the prosecutor should have been precluded from arguing that the absence of defendant's father (Sutherland Senior) as a trial witness implicated defendant's culpability. For example, the prosecutor stated in closing that if defendant had really gone to his father's house, the jury would have heard from Sutherland Senior. In the initial postconviction petition, defendant specifically argued his father was unavailable to testify because he was in the hospital at the time of trial. He cited hospital records in support. Defendant noted his argument could not have been raised on direct appeal because it involved facts outside the record.

¶ 10       The circuit court summarily dismissed the postconviction petition as frivolous and patently without merit on the basis of waiver and *res judicata*. Defendant appealed, and the dismissal was eventually affirmed. See *People v. Sutherland*, No. 1-01-3770 (2005) (unpublished order under Supreme Court Rule 23); see also *People v. Sutherland*, 345 Ill. App. 3d 937 (2004) (reversing the summary dismissal); *People v. Sutherland*, 216 Ill. 2d 727 (2005) (supervisory order) (ordering the appellate court to reconsider the dismissal in light of *People v. Blair*, 215 Ill. 2d 427 (2005)).

¶ 11       Defendant then filed a petition for a writ of *habeas corpus*, which apparently raised many of the same arguments as the initial postconviction petition. The federal district court denied the *habeas* petition and also denied defendant's request for a certificate of appealability. See *United States ex rel. Sutherland v. Hulick*, No. 07 C 3469 (N.D. Ill. Nov. 28, 2007); *United States ex rel. Sutherland v. Hulick*, No. 07 C 3469 (N.D. Ill. Feb. 8, 2008). The United States Court of Appeals for the Seventh Circuit affirmed the district court decision. *Sutherland v. Gaetz*, 581 F.3d 614 (7th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 2352 (2010).

¶ 12       In 2009, defendant filed a *pro se* petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2008)). He alleged the trial court issued an erroneous jury instruction as to identification testimony, rendering his conviction void. Defendant added that his trial counsel was ineffective for failing to "investigate the absence" of his father, Sutherland Senior. In support, defendant attached an October 1999 affidavit from his father in which Sutherland Senior stated that defendant was at his residence "at or about the time" Elaine was shot. Sutherland Senior detailed that defendant woke him up, they had a short conversation, then defendant left about 11:20 p.m. Sutherland Senior stated his home was at least 15 to 20 minutes from where the shooting occurred and explained he did not testify to these facts because he was hospitalized at the time of trial and unaware of the proceedings. The circuit court granted the State's motion to dismiss the section 2-1401 petition.

¶ 13       On September 29, 2010, defendant filed the instant *pro se* motion for leave to file a successive postconviction petition. Defendant raised claims relating to trial error, rehashing

many of the same arguments as before. In particular, he alleged yet again that trial counsel was ineffective for failing to investigate his father's whereabouts and to call Sutherland Senior as a witness at trial or, at least, to obtain a continuance and appellate counsel was ineffective for failing to raise this issue on direct appeal. Although defendant referred to his father's affidavit–stating Sutherland Senior could "attest" that defendant was at his residence when the shooting occurred and that Sutherland Senior did not testify because he was at the hospital and unaware of the trial proceedings–defendant did not append the affidavit to the petition.

¶ 14     The circuit court denied defendant leave to file a successive postconviction petition. The court concluded that the facts alleged had been available when defendant filed his first postconviction petition; as defendant had not identified any objective factor impeding his ability to raise the claims earlier, nor identified newly discovered evidence, the court concluded defendant failed to satisfy the requirements for filing a successive petition. This appeal followed.

¶ 15                                              ANALYSIS

¶ 16     The Post-Conviction Hearing Act provides a means for a criminal defendant to assert that, in the proceedings resulting in his conviction, there was a substantial denial of his constitutional rights. *People v. Evans*, 2013 IL 113471, ¶ 10. The Act permits the filing of only one petition without leave of court (725 ILCS 5/122-1(f) (West 2010)) and expressly provides that any claim not raised in the original or amended petition is waived (725 ILCS 5/122-3 (West 2010)). To initiate a successive postconviction petition, a defendant must first obtain leave of court, and unless a defendant asserts actual innocence, leave of court is demonstrated only when a defendant shows the "more exacting" standard of cause for his failure to bring the claim in his initial postconviction petition and prejudice resulting from that failure. 725 ILCS 5/122-1(f) (West 2010); *People v. Edwards*, 2012 IL 111711, ¶¶ 22-29; *People v. Conick*, 232 Ill. 2d 132, 142 (2008). To show cause, a defendant must identify an objective factor that impeded his ability to raise a specific claim during his initial postconviction proceedings. *Evans*, 2013 IL 113471, ¶ 10. To show prejudice, a defendant must demonstrate that the claim not raised so infected the trial that the resulting conviction or sentence violated due process. *Id*. These elements serve as a procedural prerequisite to obtaining review on the merits (*People v. Wyles*, 383 Ill. App. 3d 271, 274 (2008)), and both must be satisfied for the defendant to prevail (*People v. Guerrero*, 2012 IL 112020, ¶ 15). A defendant faces "immense procedural default hurdles when bringing a successive post-conviction petition," which "are lowered in very limited circumstances" because successive petitions "plague the finality of criminal litigation." *People v. Tenner*, 206 Ill. 2d 381, 392 (2002). In short, such actions are generally disfavored by Illinois courts. *Edwards*, 2012 IL 111711, ¶ 29.

¶ 17     We review *de novo* defendant's contention that he is entitled to file a successive postconviction petition with respect to the ineffective assistance of trial counsel claim. See *People v. Thompson*, 383 Ill. App. 3d 924, 929 (2008). On appeal, defendant acknowledges he has not shown "cause," in the traditional sense, because the documents relating to his

father were available in 1999, prior to when he filed his first postconviction petition; as such, his claim is subject to the normal rules of waiver. See 725 ILCS 5/122-3 (West 2010). Nonetheless, relying on *Martinez*, defendant argues he should be excused from having to show cause and forgiven his procedural default because he was not represented by legal counsel during first-stage postconviction proceedings. In *Martinez*, the Supreme Court recognized its prior ruling that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as *cause* to excuse procedural default in a *habeas* proceeding (see *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991)), but then issued a "narrow exception" to that rule. Addressing Arizona criminal procedure, the Court held that when a state like Arizona proscribes raising ineffective assistance of trial counsel claims on direct appeal, and instead reserves them only for collateral proceedings, a prisoner may establish cause before *habeas* courts for default of that claim (1) where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial or (2) where appointed counsel in the initial-review collateral proceeding, when the claim should have been raised, was ineffective under *Strickland* standards. *Martinez*, 566 U.S. at ___, 132 S. Ct. at 1318. *Martinez* emphasized that its ruling would not "provide defendants a freestanding constitutional claim" requiring the appointment of counsel in initial-review collateral proceedings; instead, the Court stated it was an "equitable ruling." *Martinez*, 566 U.S. at ___, 132 S. Ct. at 1319; see also *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (there is no constitutional right to an attorney in state postconviction proceedings).

¶ 18        Defendant's reliance on *Martinez* suffers from a number of infirmities, the most obvious of which is that *Martinez* addressed federal *habeas* law and specifically addressed Arizona criminal procedure. Unlike in Arizona, in Illinois, ineffective assistance claims generally can be raised after trial and on direct appeal. See *People v. Krankel*, 102 Ill. 2d 181, 188-89 (1984); see also *People v. Miller*, 2013 IL App (1st) 111147, ¶ 41 (recognizing this distinction). Recognizing this, defendant counters by citing *People v. Ligon*, 239 Ill. 2d 94, 112 (2010), to emphasize that "a collateral postconviction proceeding is *most often* the first point at which an ineffective assistance of counsel claim will be presented" (emphasis added). Defendant argues the instant claim could not have been raised on direct appeal, as it was outside the record, which is surely a distinction without difference. In addition, after briefs were filed in this case, defendant filed a motion to cite *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911 (2013), a just-issued United States Supreme Court case addressing whether *Martinez* applied in Texas, where a defendant similarly can "in theory" raise a claim of ineffective assistance of trial counsel on direct appeal, but "as a matter of procedural design and systemic operation" is forced to raise the claim in collateral proceedings. *Trevino*, ___ U.S. at ___, 133 S. Ct. at 1921. *Trevino* held this was not a meaningful distinction and *Martinez* therefore applied, allowing a federal *habeas* court to find "cause" in such an instance, thereby excusing a defendant's procedural default. *Trevino*, ___ U.S. at ___, 133 S. Ct. at 1921. Defendant now argues his case is analogous to *Martinez* and *Trevino* and further emphasizes that the Illinois Supreme Court has relied on the reasoning of federal *habeas* cases in adopting certain standards in postconviction proceedings, thus urging us to do the same. See, *e.g.*, *People v. Hodges*, 234 Ill. 2d 1, 12-16 (2009); *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002).

¶ 19    While we appreciate the arguments raised by defendant's very capable counsel, these positions ignore pronouncements on postconviction law by our own state supreme court that militate against defendant and are not necessarily at odds with *Martinez* or *Trevino*. The Illinois Supreme Court has long held that prisoners do *not* have a constitutional right to be represented by counsel in postconviction proceedings. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007); *People v. Porter*, 122 Ill. 2d 64, 75-77 (1988). This is so *even where those proceedings are the first tier of review for an ineffective assistance of trial counsel claim.* *Ligon*, 239 Ill. 2d at 113 (relying in part on *Martinez v. Schriro*, 623 F.3d 731 (9th Cir. 2010), *overruled in part by Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309 (2012)). Instead, as a matter of legislative grace, counsel may be appointed at second-stage postconviction proceedings. 725 ILCS 5/122-4 (West 2010). What's more, in *People v. Evans*, 2013 IL 113471, ¶ 13, our supreme court's most recent case on successive postconviction petitions, the court held that the petitioner could not claim ignorance of the law as "cause" to justify the petitioner's failure to include a claim in his initial postconviction petition. Yet, that is essentially the "cause" defendant now presents. Although college-educated, a fact hammered at during trial, defendant claims he did not have the wherewithal to draft an initial postconviction petition accusing his trial attorney of unreasonably failing to call a *key* alibi witness, defendant's father, at trial. Under *Evans*, this argument does not fare well. In addition, *Evans* also declined to address certain questions swirling around the area of successive postconviction petitions and requested that the legislature take the opportunity to clarify the law. 2013 IL 113471, ¶¶ 12, 18. Given that, we need not add more to the mix.

¶ 20    Significantly, and *most significantly*, assuming *Martinez* were to apply here, defendant's petition still could not survive even under the strictures of that case. *Martinez* held that to overcome procedural default, a defendant must demonstrate the underlying ineffective assistance claim is a substantial one, meaning one that has merit. *Martinez*, 566 U.S. at ___, 132 S. Ct. at 1318. That, defendant simply cannot do. See *Miller*, 2013 IL App (1st) 111147, ¶ 41. And, this brings us to the prejudice prong of our own successive postconviction test in Illinois. As stated, the test for obtaining leave to file a successive postconviction petition is cause *and* prejudice, not cause *or* prejudice. We note that defendant failed to attach his father's affidavit to his successive petition even though it is his burden to submit enough documentation for a court to make the determination of whether leave should be granted. See *People v. Tidwell*, 236 Ill. 2d 150, 161 (2010); see *People v. Edwards*, 2012 IL App (1st) 091651, ¶¶ 28-29. Even assuming he had, defendant still cannot establish that the claimed error so infected the trial as to deny him due process. To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must demonstrate (1) that trial counsel's performance was objectively unreasonable and (2) that this deficient performance led to substantial prejudice. *People v. Harris*, 206 Ill. 2d 293, 303 (2002). As with the successive postconviction petition test, defendant would have to satisfy both prongs of the *Strickland* test, which he cannot do. See *Harris*, 206 Ill. 2d at 304.

¶ 21    Here, five-year-old Erica, in what can only be characterized as an excited utterance (see *People v. Sutton*, 233 Ill. 2d 89, 107-08 (2009)), told her neighbor a moment after the shooting that "Will done shot us," then subsequently told three police officers the same, also identifying defendant in photographs then and later in court. This can be likened to the

excited utterance, "Oh, my God, *** Buster just shot Maria," in the classic *People v. Poland*, 22 Ill. 2d 175, 179-80 (1961). Erica's identification of defendant as the shooter was unequivocal. Given that defendant had been married to her mother since Erica was about age one, we have no doubt that even a sleepy five-year-old could recognize her bespectacled stepfather under the scenario. The State presented evidence that Erica's biological father neither looked like defendant nor lived in Chicago, thus rebutting defendant's misidentification postulation. Significantly, the circumstantial evidence strongly supported the State's theory. That evidence included defendant's harassing behavior leading up to the day of the shooting, his menacing tone following Elaine's request for a divorce, his presence at her home shortly before the shooting–a fact not only testified to by defendant but by a State and a defense witness–defendant's admitted prior ownership of a .22-caliber gun, the discovery of surgical gloves and a face mask in defendant's trunk, and defendant's inconsistent testimony as to why he was even present at Elaine's home that evening. Although defendant breathlessly urges that his father could have saved the case, defendant testified his father was drunk or asleep that evening! This does not invoke the image of a star witness. Defense counsel downplayed the significance of Sutherland Senior's absence at trial during closing argument, which effectively rebutted the State's claim that Sutherland Senior was a key witness. It also throws cold water on defendant's postconviction argument before this court. It merits mention that Sutherland Senior's proposed testimony does not even square up with defendant's time line. Defendant testified he left for Elaine's around 9 or 10 p.m., and was there only momentarily before going to his father's house. Sutherland Senior's affidavit also contradicts the testimony of some alibi witnesses who said defendant was back at the house party by 10:30 p.m. or 11 p.m. Finally, Sutherland Senior's proposed testimony taken at face value does not even rebut the State's theory that defendant committed the shooting about 11 p.m.; defendant could have done so and then been at his father's home, which defendant testified was 10 to 15 minutes away, by around 11:20 p.m. On this record, defense counsel's decision not to call Sutherland Senior or to present evidence regarding his testimony seems reasonable. See *Harris*, 206 Ill. 2d at 303.

¶ 22    What's more, defense counsel called eight witnesses on defendant's behalf and persistently defended a case where the evidence left counsel with hardly any strategic choice at all. Given that counsel is presumed to act on sound strategy and judgment (*Harris*, 206 Ill. 2d at 303-04), had defendant's father been a truly worthwhile witness, the record supports that counsel would have pursued the matter. As it stands, defendant cannot establish either that his counsel was unreasonable in representing him in this specific regard or that there is a reasonable probability the testimony of his father would have been sufficient to overcome the State's competent evidence against him or made defendant more believable and changed the outcome of the proceeding. See *Harris*, 206 Ill. 2d at 303-04.

¶ 23    Defendant has failed to establish that the underlying claim of ineffective assistance of trial counsel has even an arguable basis and has necessarily failed to establish the more stringent cause-and-prejudice standard to warrant granting leave to file a successive postconviction petition.

¶ 24    Finally, we note that after the State appellate defender filed the record and its brief in this appeal, defendant sought leave to file a *pro se* supplemental brief and reply brief, which this

court granted. While we have reviewed defendant's supplemental briefs, they merit no more mention because a defendant cannot proceed both by counsel and *pro se*. *People v. Flynn*, 341 Ill. App. 3d 813, 821 (2003). Defendant chose to proceed with legal representation on appeal, and he did not request the withdrawal of appellate counsel.

¶ 25                                    CONCLUSION

¶ 26        We therefore affirm the decision of the circuit court of Cook County denying defendant leave to file a successive postconviction petition.

¶ 27        Affirmed.