# Illinois Official Reports

## Appellate Court

---

### *People v. Johnson*, 2019 IL App (1st) 153204

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v. ANTOINE JOHNSON, Petitioner-Appellant. |
| District & No. | First District, Second Division<br>No. 1-15-3204 |
| Filed | July 25, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 99-CR-6463; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Brian L. Josias, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Joseph Alexander, and Iris G. Ferosie, Assistant State's Attorneys, of counsel), for the People. |

Panel                              JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justice Hyman concurred in the judgment and opinion.
Justice Hyman also specially concurred, with opinion.
Justice Mason dissented, with opinion.

## OPINION

¶ 1     Defendant Antoine Johnson appeals from the trial court's dismissal of his amended successive postconviction petition at the second stage under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)). On appeal, defendant contends that trial counsel was ineffective for failing to investigate and call Douglas Williams as a witness who would have testified Williams was present at the shooting and defendant was not a shooter. We reverse and remand.

¶ 2                              I. BACKGROUND

¶ 3     Following a 2000 jury trial, defendant was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 1996)) and three counts of aggravated battery with a firearm (*id.* § 12-4.2(a)(1)). He was sentenced to 28 years in prison for first degree murder and 10 years in prison on each aggravated battery with a firearm count, to be served concurrently. We affirmed the trial court's judgment on direct appeal. *People v. Johnson*, No. 1-00-3913 (2003) (unpublished order under Illinois Supreme Court Rule 23).

¶ 4     Defendant's convictions arose from a shooting that occurred on August 28, 1998, and resulted in the death of Patricia Bowers and injury to Larrail Wright, Mahdi Riley, and Mikki West. Defendant and codefendant, Robert Branch, were charged with four counts of first degree murder, four counts of attempt first degree murder, three counts of aggravated battery with a firearm, five counts of aggravated discharge of a firearm, and three counts of aggravated battery.[1] Before trial, defendant filed motions to suppress identification and statements and to quash arrest and suppress evidence. The court denied defendant's motions.

¶ 5     At trial, Wright testified that, on August 28, 1998, at about 11 p.m., he was with Riley, "Smurf," and "Poppie" in front of Big O's, a liquor store located near 1469 East 67th Street.[2] Wright heard gunshots coming from across the street, after which he felt a gunshot hit his back. He turned around and saw "Big Mac," whom he identified at trial as defendant; "Pumpkin," whom he identified at trial as Branch; and "Quick" shooting toward the crowd in front of Big O's.[3] Defendant and Branch were standing together on the north side of the street, and Quick was standing on other side of the street next to a church. Defendant had a cream colored and shiny gun, and Branch had either a "9-millimeter or a .380" gun. Wright ran through a vacant lot and into a nearby house. Wright heard at least 30 gunshots. He was later taken to the hospital, where he received treatment for a bullet that went to his jaw. At trial, Wright testified

---

[1]Defendant and Branch were tried in separate but simultaneous trials.

[2]"Smurf" and "Poppie" are not further identified in the record.

[3]At the time of trial, "Quick" was deceased.

that, while he was in the hospital, he told Chicago police detective Raymond Binkowski that defendant was at the shooting and that he recalled telling Binkowski that defendant, Branch, and Quick were all shooting. Wright denied having told Binkowski that he did not see defendant that night at the shooting. The State showed Wright photographs of the scene of the shooting, and he described where he was standing when he was shot and where defendant and Branch were standing when he first saw them shooting.[4]

¶ 6    Wright testified that, before the shooting, he had known defendant and Branch for about four or five months. On August 31, 1998, Wright viewed a lineup at the police station and identified defendant "[f]rom the shooting." Wright and defendant were in different factions of the 67th and Blackstone gang.

¶ 7    Mahdi Riley testified that, on August 28, 1998, at about 11 p.m., he was in front of Big O's located near 67th Street and Blackstone Avenue with Ramell Bowman, Douglas Williams, and Wright, who were members of the same gang. One of them said "there they go," and Riley looked up and saw "Big Mack," whom he identified at trial as defendant, and "Pumpkin," whom he identified at trial as Branch, standing on the corner of 67th Street. Defendant and Branch were pointing handguns toward the crowd standing in front of Big O's. Riley rode away on his bike and, while doing so, was shot in the back. He jumped off his bike and ran through a vacant lot and into a nearby house. Riley testified that he heard about 20 to 30 gunshots that came from the corner where defendant and Branch were standing. Riley identified photographs of the scene of the shooting and described where defendant and Branch were standing when he saw defendant and Branch shooting. Before the shooting, Riley had known defendant for about four or five years.

¶ 8    Later at the hospital, Riley identified defendant in photographs as being from "[t]he shooting." Riley acknowledged that, after the shooting, he only identified defendant and Branch as the shooters and that he told a detective he did not see Quick at the shooting. On October 12, 1998, Riley identified a photograph of Branch and told a detective he recognized him from "[t]he night of the shooting." On that same day, Riley identified Quick in a lineup as one of the shooters. Riley testified that he had a conviction for unlawful use of a firearm and that, in previous encounters with the police, he had given false names and incorrect dates of birth.

¶ 9    Mikki West testified that, on August 28, 1998, at about 11 p.m., she greeted Bowers in front of Big O's and then heard multiple gunshots coming from across the street. West felt a bad pain and saw that her leg was bleeding. She looked up and saw Bowers's eyes "rolled up in her head" and "holes in her neck." West went into the store, heard more gunshots, and then saw Bowers fall. West was shot one time in her leg.

¶ 10    Chicago police detective Ted Przepiora testified that, on August 31, 1998, Wright identified defendant in a lineup as one of the offenders who shot at him. On October 12, 1998, Riley identified Branch in a photographic array as one of the offenders who shot at him and, on February 11, 1999, Wright and Riley separately identified Branch in a lineup as one of the offenders who shot at him.

---

[4]The record on appeal does not contain the photographs. As the appellant, it is defendant's burden to present a complete record on appeal. We will construe any doubts arising from the incomplete record against him. See *People v. Smith*, 406 Ill. App. 3d 879, 886 (2010).

¶ 11        Assistant State's Attorney (ASA) Geraldine D'Souza testified that, on August 31, 1998, she spoke with defendant in the presence of Przepiora and a youth officer. Defendant was 16 years old at this time. D'Souza advised defendant of his *Miranda* rights, and defendant agreed to speak. D'Souza testified to the substance of defendant's statement to her. D'Souza testified that defendant stated that, on August 28, 1998, he was with "Maleeka" in the area of 1469 East 67th Street. "Quick" and "Pumpkin," who were also in the area, pulled out .380-caliber guns and started shooting at a crowd across the street. Defendant stated that two factions in the Gangster Disciple gang had been fighting, and there was a "war" in the area. Defendant was scared and felt in danger. He ran around the corner and through an alley and then came out behind Quick and Pumpkin, after which he pulled a .380-caliber weapon from his waistband and started shooting in the same direction. Defendant stated he shot the gun four times and then ran. On August 30, 1998, defendant disposed of the gun on 71st Street.

¶ 12        D'Souza generated a report after the interview, which defendant did not review or sign. Defendant's statement was not reduced to writing, and he never reviewed or signed it. D'Souza testified that defendant's statement was "preposterous."

¶ 13        Forensic investigator Joseph Bembynista testified that, on August 29, 1998, at three different locations at the scene of the shooting, he recovered 9-millimeter cartridge casings in groups of six, seven, and eight. Cook County medical examiner Nancy Jones testified that it was her opinion that Bowers's cause of death was multiple gunshot wounds and that the manner of death was homicide. She also recovered a fragmented medium caliber copper-jacketed bullet from Bowers's calf.

¶ 14        Forensic scientist Laura Fleming testified that at least three firearms were used in the shooting. The bullet fragment recovered from Bowers's body was "9-millimeter/.38 caliber," meaning that it was in the ".38 caliber family" and she could not determine whether it was a 9-millimeter caliber.

¶ 15        Fleming testified that it was fair to say that 9-millimeter ammunition could not be fired from a .380-caliber firearm.

¶ 16        Chicago police detective Raymond Binkowski testified for defendant. On August 29, 1998, Binkowski interviewed Wright at the hospital when Wright was being treated for a gunshot injury to his face. Binkowski testified that Wright was mumbling and that he had a hard time understanding Wright due to the treatment he was receiving for his gunshot injury. Binkowski understood Wright to have said that he did not see "Big Mack" at the shooting. Wright also told Binkowksi that there were two shooters. Quick was a shooter, and he was not sure whether "Pumpkin" did any shooting.

¶ 17        Defendant presented a stipulation between the parties that Riley "had used the name of Abder Riley" on prior occasions.

¶ 18        In rebuttal, Przepiora testified that he interviewed Wright at the police station on August 31, 1998. Przepiora asked Wright for the names of the individuals he saw shooting, and Wright told him, "Big Mack," "Pumpkin," and "Quick." Przepiora asked defendant whether he was sure he had seen "Big Mack," and Wright responded, "I am positive." Wright told Przepiora that he told Binkowski at the hospital that "Big Mack" was a shooter.

¶ 19        The jury found defendant guilty of first degree murder and three counts of aggravated battery with a firearm for Wright, West, and Riley. The court denied defendant's motion for a new trial and sentenced him to 30 years in prison for first degree murder and 10 years in prison

for each aggravated battery count, to be served concurrently. The court subsequently reduced his sentence for first degree murder to 28 years in prison. Defendant appealed, arguing, *inter alia*, that the court erred when it denied his motion to suppress statement. We affirmed, finding that defendant gave his statement voluntarily. *People v. Johnson*, No. 1-00-3913 (2003) (unpublished order under Illinois Supreme Court Rule 23).

¶ 20　　In 2003, defendant filed an initial postconviction petition, and the trial court granted the State's motion to dismiss that petition. Defendant subsequently filed a "supplemental petition" in 2007, and the trial court granted the State's motion to dismiss that petition. Defendant appealed, and we subsequently allowed defendant's motion to dismiss the appeal (case No. 1-08-1796).

¶ 21　　In 2011, defendant filed a motion for leave to file a *pro se* successive postconviction petition. Defendant asserted actual innocence based on newly discovered evidence. He attached affidavits of Terrance Hilliard and Jason Nichols. In Hilliard's affidavit, he averred he was present at the shooting and saw only Quick shoot at Riley. He attested that Riley told him that Riley had falsely identified defendant and Branch as the shooters. In Nichols's affidavit, he averred that Riley had told him that Riley and Wright were going to get "even" by identifying defendant, Branch, and Quick as the shooters. On March 17, 2011, the court docketed the petition and appointed the Cook County Public Defender's Office to represent him.

¶ 22　　Thereafter, on January 4, 2012, defendant filed a *pro se* "motion for leave to proceed pro-se [*sic*] and to releave appointed counsel," asserting that postconviction counsel informed him that he had contacted Nichols and Hilliard but "nothing helpful came from them" and arguing that postconviction counsel did not investigate the witnesses' claims. On January 19, 2012, postconviction counsel filed a motion under *People v. Greer*, 212 Ill. 2d 192 (2004), asserting that no useful testimony would come from Hilliard and Nichols. The trial court granted counsel's motion to withdraw and allowed defendant time to file additional *pro se* pleadings or hire private counsel.

¶ 23　　In March 2013, defendant filed a *pro se* "1st Amended Petition to Petitioner's 1st Successive Petition." He asserted actual innocence based on newly discovered evidence from Nichols and Hilliard and attached the same affidavits, with the addition of handwritten notes, that he had attached to the 2011 petition. He also argued that his statement to the police was unconstitutional. In April 2013, the trial court docketed the petition and appointed the Cook County Public Defender's Office to represent him. The same postconviction counsel who had previously filed the *Greer* motion on the 2011 petition was assigned to defendant's case.

¶ 24　　On July 22, 2013, defendant filed a "Motion to Appoint Different Counsel." He asserted, *inter alia*, that he could not trust postconviction counsel to provide reasonable assistance of counsel because "his mind is made up [a]lready." He asserted that he requested postconviction counsel to see if Riley

> "would speak with him because of information from his cousin he wanted to speak with me about, how he falsely testified that he seen me shooting and that I shot them. When the fact is his motive for his testimony was revenge for a previous incident and a promise of leniency from the authorities."

He claimed that postconviction counsel told him that, "if [Riley] wanted to contact me he knew where to find me" and that postconviction counsel would not try to contact Riley.

¶ 25 Next to this motion in the common law record, there is an unnotarized statement from James Lewis and a notarized affidavit from Michael Johnson. Johnson averred that Riley told him that he identified Branch and defendant as the shooters because he wanted revenge. The record does not show that the trial court issued a ruling on defendant's motion to appoint different counsel.

¶ 26 Thereafter, in April 2015, defendant, through postconviction counsel, filed an amended successive postconviction petition, asserting a free-standing claim of actual innocence and ineffective assistance of counsel based on trial counsel's failure to investigate Douglas Williams as a witness. To the petition, defendant attached a notarized affidavit, signed and dated on January 21, 2015, from Williams, averring he was also known as "Smurf" and that, on the night of the shooting, he was standing at the corner of 67th Street and Blackstone Avenue with Riley, Wright, Raymell Brown, and a few other men. Williams averred that defendant was not a shooter and that he came forward in early 2014 when he found out that defendant had been found guilty of murder. Defendant's notarized affidavit, signed and dated on March 11, 2015, averred that, after he was arrested, he asked trial counsel to send an investigator to the scene of shooting to find witnesses, but counsel did not do so. Defendant averred that Williams "frequented the corner of 67th and Blackstone and could have easily been found."

¶ 27 At the April 13, 2015, court date, postconviction counsel informed the court that the amended petition filed by counsel superseded defendant's *pro se* petition. The State filed a motion to dismiss defendant's amended successive petition. At the July 8, 2015, hearing on defendant's amended successive petition, postconviction counsel informed the court that he had not contacted trial counsel. The court did not issue a ruling on the petition but gave counsel time to contact trial counsel and supplement the petition.

¶ 28 On October 1, 2015, defendant filed an affidavit from trial counsel, asserting she could not recall sending an investigator to search the area of the shooting for witnesses and she did not send an investigator to search for Williams. Williams filed another affidavit, signed and dated October 1, 2015, averring he was at the shooting and defendant was not one of the shooters. After the hearing on defendant's amended successive petition, the trial court granted the State's motion to dismiss, finding that trial counsel did not improperly represent defendant.

¶ 29                                          II. ANALYSIS

¶ 30 On appeal, defendant contends that he made a substantial showing that trial counsel was ineffective for failing to investigate or present Douglas Williams as a witness at trial. He asserts that Williams would have testified that he was present at the shooting and defendant was not one of the shooters. Defendant argues that the evidence against him was weak, specifically that Wright and Riley's testimony was inconsistent and unreliable, and his confession was unverified and "nonsensical." He argues that, because the State's identification witnesses were unreliable, Williams's exculpatory testimony would have likely changed the result of trial. Defendant requests that we remand the case for an evidentiary hearing. We note that defendant alleged a claim of actual innocence in his amended successive postconviction petition, but he does not argue this issue on appeal.

¶ 31 Under the Act, a defendant may collaterally attack a conviction by asserting that it resulted from a substantial denial of his or her constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2012); *People v. Tate*, 2012 IL 112214, ¶ 8. The Act contemplates the filing of only one postconviction petition (*People v. Pitsonbarger*, 205 Ill. 2d 444, 456 (2002)), and successive

postconviction petitions are disfavored (*People v. Jones*, 2017 IL App (1st) 123371, ¶ 41). There are three stages in the postconviction petition process. *People v. Little*, 335 Ill. App. 3d 1046, 1050 (2003).

¶ 32 A defendant seeking to file a successive postconviction petition must first obtain leave of court. *People v. Edwards*, 2012 IL 111711, ¶ 24. To obtain leave of court, the petition must state a colorable claim of actual innocence or, as relevant here, establish cause and prejudice. *People v. Jackson*, 2016 IL App (1st) 143025, ¶ 19. When, as here, the trial court grants a defendant leave to file a successive postconviction petition, the petition is effectively advanced to the second stage of postconviction proceedings. *Id.* ¶ 20.

¶ 33 At the second stage, the court may appoint counsel for defendant (725 ILCS 5/122-4 (West 2014)), and counsel may amend the petition (*People v. Jones*, 2017 IL App (4th) 140594, ¶ 28). The State may file a motion to dismiss or answer the petition. *People v. Harper*, 2013 IL App (1st) 102181, ¶ 33. If the State files a motion to dismiss the petition, as here, the trial court must determine whether the petition and accompanying documentation make a substantial showing of a constitutional violation. *Id.* The court must take all well-pled facts that are not positively rebutted by the trial record as true (*People v. Pendleton*, 223 Ill. 2d 458, 473 (2006)). It is a defendant's burden to make a substantial showing of a constitutional violation (*People v. Shaw*, 2018 IL App (1st) 152994, ¶ 19). If the petition and accompanying documentation do not make such a showing, the trial court dismisses the petition. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). If a petition is advanced to a third stage, the trial court conducts an evidentiary hearing. *Pendleton*, 223 Ill. 2d at 473. We review *de novo* the trial court's dismissal of a postconviction petition at the second stage. *People v. Snow*, 2012 IL App (4th) 110415, ¶ 15.

¶ 34 Initially, we note that the State asserts that defendant failed to demonstrate cause for not raising his claim in an earlier proceeding and argues we should affirm on this basis.

¶ 35 Under the Act, to file a successive postconviction petition, the defendant must demonstrate "cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." 725 ILCS 5/122-1(f) (West 2014). Cause is demonstrated if a defendant identifies "an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." *Id.* Prejudice is established "by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* The cause and prejudice standard is higher than the standard applied to an initial postconviction petition, where the trial court may summarily dismiss the petition at the first stage if it is "frivolous or patently without merit." *Jackson*, 2016 IL App (1st) 143025, ¶¶ 18-19. A defendant must establish both cause and prejudice. *People v. Sutherland*, 2013 IL App (1st) 113072, ¶ 16. Throughout the three-stages in the postconviction process, the State has the "opportunity to seek dismissal of the petition on any grounds, including the defendant's failure to prove cause and prejudice for not having raised the claims in the initial postconviction petition." *People v. Bailey*, 2017 IL 121450, ¶ 26.

¶ 36 Here, the trial court advanced defendant's amended successive postconviction petition to the second stage but never made a finding that defendant established cause and prejudice for failing to raise his claim in an earlier proceeding. In the State's motion to dismiss defendant's successive petition, it asserted that defendant's ineffective assistance of counsel and actual innocence claims were waived because he did not present them in his initial postconviction petition. In defendant's response, he claimed that, because trial counsel failed to investigate

Williams, he did not learn that Williams would be an exculpatory witness until 2014, which was after defendant's direct appeal and initial postconviction petition. The trial court granted the State's motion to dismiss defendant's successive petition but made no finding on whether defendant established cause and prejudice.

¶ 37     Because the State can seek dismissal based on a defendant's failure to establish cause and prejudice at any stage in the postconviction process, as the State did here at the second stage, even though the trial court advanced the petition to the second stage and made no cause and prejudice findings, we will review whether defendant established cause and prejudice for his claim that trial counsel was ineffective for failing to investigate and call Williams as a witness.

¶ 38     We conclude that defendant established cause and prejudice for his claim that counsel was ineffective for failing to investigate and present Williams as a witness at trial.

¶ 39     In Williams's affidavit attached to defendant's successive petition, Williams averred that he was at the shooting, defendant was not a shooter, and he came forward in early 2014. Thus, defendant could not have known until 2014, which was after he filed his direct appeal and initial postconviction petition, that Williams would have supported his innocence. Defendant could therefore not raise his claim in these earlier proceedings.

¶ 40     We acknowledge that Riley testified at trial that he was in front of the restaurant with Williams, Wright, and a man named Ramell Brown before the shooting; thus, Williams's presence at the shooting was known. However, defendant's affidavit attached to his successive petition avers that he asked trial counsel to send an investigator to the scene of the shooting to find witnesses, but counsel did not do so. Thus, given that defendant only knew that Williams was present at the shooting and did not know what Williams testimony would be until 2014 and that defendant alleges he requested trial counsel to investigate witnesses at the scene of the shooting but counsel failed to do so, we find that defendant's failure to investigate or present Williams as a witness at trial relates to his ineffective assistance of counsel claim, not his failure to raise his claim in an earlier proceeding. Thus, defendant has established cause for his claim that trial counsel was ineffective for failing to investigate or present Williams as a witness.

¶ 41     Defendant has also established prejudice. Williams's affidavit avers that he was at the scene of the shooting and that defendant was not a shooter. Williams's statement that defendant was not the shooter contradicts the two victims, Riley and Wright, who were standing next to Williams at the time of the shooting and identified defendant as the shooter. Riley and Wright were from rival gangs and involved in gang war at the time of the shooting. As discussed more fully below, defendant's trial counsel attacked Riley and Wright's identification testimony at trial, and Williams's testimony could have corroborated defendant's theory that their testimony was biased and unreliable. Thus, given that Williams would have provided exculpatory evidence that would have contradicted Riley and Wright's biased identification testimony as rival gang members, defendant has demonstrated that counsel's failure to investigate and present Williams as a witness so infected the trial that the resulting conviction or sentence violated due process. Accordingly, defendant has established both cause and prejudice for his claim that counsel was ineffective for failing to call Williams as a witness.

¶ 42     We now address defendant's argument that he made a substantial constitutional showing that trial counsel was ineffective for failing to investigate or present Williams as a witness at trial. To establish a claim of ineffective assistance of counsel as it applies to the second stage, a

defendant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant. *People v. Coleman*, 183 Ill. 2d 366, 397 (1998) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). To establish deficient performance, a defendant must show that counsel's performance was "objectively unreasonable under prevailing professional norms." *People v. Colon*, 225 Ill. 2d 125, 135 (2007). The defendant must overcome the strong presumption that counsel's action or inaction was the result of sound trial strategy. *People v. Perry*, 224 Ill. 2d 312, 341-42 (2007).

¶ 43      To establish prejudice, a defendant must show that there was a " 'reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.' " *People v. Miller*, 393 Ill. App. 3d 629, 632-33 (2009) (quoting *People v. Paleologos*, 345 Ill. App. 3d 700, 706 (2003)). Defendant must satisfy both prongs. *Sutherland*, 2013 IL App (1st) 113072, ¶ 20.

¶ 44      We conclude that defendant is entitled to a third-stage evidentiary hearing regarding his claim that counsel was ineffective for failing to investigate or call Williams as a witness at trial. The decisions on what evidence to present and which witnesses to call rest with trial counsel and are generally immune from claims of ineffective assistance of counsel, as they are matters of trial strategy. *People v. Ward*, 187 Ill. 2d 249, 261-62 (1999). However, "counsel's tactical decisions may be deemed ineffective when they result in counsel's failure to present exculpatory evidence of which he is aware, including the failure to call witnesses whose testimony would support an otherwise uncorroborated defense." *People v. Brown*, 336 Ill. App. 3d 711, 718 (2002).

¶ 45      Defendant argued at trial that the State's two eyewitnesses, Riley and Wright, misidentified him and were not credible. In Williams's affidavit, he averred he was at the shooting and defendant was not a shooter. Taking the allegations as true, as we must at the second stage, Williams's allegation that defendant was not a shooter is exculpatory and corroborates defendant's theory that defendant was misidentified and the State's identification witnesses were not credible.

¶ 46      The record does not show a strategic reason for trial counsel's decision not to investigate or present Williams as a witness. See *People v. Tate*, 305 Ill. App. 3d 607, 612 (1999). Although the State asserts that counsel could have decided that presenting Williams's contradictory alibi testimony to the jury would have been strategically riskier as opposed to focusing solely on the unreliability of the eyewitnesses' identification testimony, we cannot determine based on the record before us whether that was counsel's reason. See *id.* After the trial court hears evidence on this issue, it will in a "better position" to review whether counsel provided effective assistance of counsel. See *id.*

¶ 47      We note that the State asserts that there is nothing in the record to show that trial counsel was aware of Williams or his testimony. However, at trial, there was testimony that Williams was at the scene of the shooting, as Riley testified he was with Williams, Wright, and Ramell Bowman in front of Big O's before the shooting. Defendant's affidavit averred that he told trial counsel to send an investigator to the scene of the shooting to find witnesses but counsel did not do so. Defendant also averred that Williams was known to frequent the corner where the shooting took place and that Williams could have been easily found. Trial counsel's affidavit averred that she did not recall sending an investigator to search the area of the shooting for witnesses and she did not send an investigator to search for Williams. Thus, because we must take the allegations in the affidavits as true, defendant made a substantial showing that counsel

was aware of potential witnesses such as Williams, who could have possibly provided exculpatory testimony, and she failed to investigate them. See *People v. Cleveland*, 2012 IL App (1st) 101631, ¶ 61 (finding that the defendant made a substantial showing that his constitutional right was violated by defense counsel's failure to fully investigate the possible testimony of exculpatory witnesses).

¶ 48     Accordingly, defendant has made a substantial constitutional showing that trial counsel was deficient for not investigating or presenting Williams as a witness.

¶ 49     Further, defendant has made a substantial showing that he was prejudiced because he has demonstrated that there was a reasonable probability that the result of trial would have been different had counsel investigated and presented Williams as witness at trial.

¶ 50     Wright and Riley, who were from rival gangs, both identified defendant at trial as one of the shooters, and defense counsel argued that they were not credible. For example, counsel attacked Riley's credibility by eliciting testimony that he had previously lied to the police several times about his name and date of birth, he had prior felony convictions, and he and defendant were in rival gangs. Defense counsel introduced testimony from a detective that Wright told him in the hospital after the shooting that he did not see defendant at the shooting, and he was not sure whether Branch did any shooting. Williams's affidavit would have corroborated defendant's theory that Wright and Riley were not credible and falsely identified him and it would have contradicted Wright and Riley's testimonies that identified defendant as a shooter. Had Williams testified at trial, counsel could have further attacked Wright and Riley's reliability, credibility, and identification testimony.

¶ 51     Further, although the ASA testified that defendant admitted after the shooting that he shot into the crowd with Quick and Branch, trial counsel argued at trial that defendant's statement, which he gave when he was 16 years old, was unreliable and "preposterous." Further, defendant's statement to the ASA was inconsistent with the forensic evidence. Defendant stated he used a .380-caliber weapon but the forensic investigator only testified he recovered 9-millimeter cartridge casings at the shooting, and the forensic scientist testified that 9-millimeter ammunition could not be fired from a .380-caliber firearm. Moreover, defendant stated he saw Quick and Branch pull out .380-caliber guns and that he came behind them and shot in the same direction. Wright however testified that defendant and Branch were standing together and that Quick was on the other side of the street, and Riley testified that, when he looked up, he saw only two shooters, defendant and Branch, at the corner shooting their guns at the crowd. Given the inconsistencies between defendant's statement to the ASA and the evidence, had the jury found Williams's testimony credible, Williams would have supported defendant's arguments that his confession was unreliable and inconsistent.

¶ 52     Because Williams's testimony would have supported defendant's arguments that Riley and Wright's identification testimony was unreliable and not credible and that defendant's statement was unreliable and inconsistent with the evidence, there is a reasonable probability that the result of the trial would have been different had the jury heard Williams's testimony that defendant was not a shooter. See *id.* ¶ 60 (finding that the defendant made a substantial showing that counsel's representation was unreasonable where counsel did not call exculpatory witnesses, noting that, "[i]n the absence of a showing of reasonable trial strategy, a sufficient showing has been made that counsel's decision prejudiced the defendant" and "[i]t seems clear that putting on alibi evidence before the jury would have increased the defendant's chances of acquittal").

¶ 53    Accordingly, defendant has made a substantial showing that his constitutional right to effective assistance of counsel was violated when counsel failed to investigate and present Williams as a witness at trial. Therefore, we reverse and remand for third-stage proceedings. Further, given the allegations in defendant's *pro se* "motion to appoint different counsel" that his postconviction counsel did not investigate Riley's cousin, who allegedly told defendant that Riley falsely identified defendant a trial, we also remand for the opportunity for appointed counsel to, if necessary, amend defendant's successive petition.

¶ 54    Given our disposition, we need not review defendant's alternative argument that the trial court erred because it failed to conduct an inquiry to ensure there was no conflict of interest in postconviction counsel representing him on his amended successive postconviction petition at the second stage.

¶ 55                                    III. CONCLUSION

¶ 56    For the reasons explained above, we reverse the judgment of the circuit court dismissing defendant's amended successive postconviction petition at the second stage, and we remand for third-stage proceedings.[5]

¶ 57    Reversed and remanded.

¶ 58    JUSTICE HYMAN, specially concurring:

¶ 59    I agree with the analysis in the lead opinion, and I join it in full. I write separately to emphasize that we have a duty to avoid "rigid and unreasonable adherence to formalism to the detriment of fairness." *O'Brien v. Meyer*, 281 Ill. App. 3d 832, 839 (1996). The possibility of Johnson's innocence must not be sacrificed at the expense of formalism or judicial economy.

¶ 60    Johnson has presented evidence that a witness, who trial counsel knowingly declined to investigate, would testify that he was not the shooter. We are not permitted to second guess the credibility of that evidence at this stage. *People v. Sanders*, 2016 IL 118123, ¶ 42 ("credibility is not an issue at the second stage of postconviction proceedings"). We must take this evidence as true and consider it in light of the additional facts that Johnson's statement admitting guilt was not only inconsistent with the physical evidence but also that the two witnesses who identified Johnson as the shooter at trial were significantly impeached. While reasonable minds can disagree as to whether the particulars of the cause-and-prejudice test have been met, given the evidence, I choose to err on the side of allowing a full consideration of Johnson's claim.

¶ 61    I agree that the cause-and-prejudice test has been satisfied, but even if I held reservations about it, I would be inclined to reverse. As the case stands, a real possibility exists that Johnson has been serving a 28-year prison sentence for a murder he did not actually commit. That possibility endures because trial counsel did not investigate a witness who, as far as the record reveals, would have been discoverable. Again, taking the affidavits as true (as we must), Johnson only has Williams's affidavit because he came forward after learning of Johnson's conviction. Had he not volunteered that information, Johnson would have been put to the

_____

[5]In response to footnote 6 in the dissent (*infra* ¶ 65 n.6), this matter took additional time while waiting for an Illinois Supreme Court decision that might have assisted in the analysis.

- 11 -

herculean task of conducting an independent investigation from prison. While not a post-conviction case, our supreme court has spelled out the pertinent interests: "We deal with probabilities, not certainties; we deal with risks and threats to the defendant's rights. When there is error in a close case, we choose to err on the side of fairness, so as not to convict an innocent person." *People v. Herron*, 215 Ill. 2d 167, 193 (2005).

¶ 62   The dissent misunderstands the point of my separate writing. The majority opinion holds that Johnson has satisfied cause and prejudice. I wrote to emphasize that not only is this result legally correct but also prudent. Of course, precedent limits our decisionmaking but "within the boundaries set by the text and precedent, judgments of fairness and policy are appropriate." David A. Strauss, *Common Law Constitutional Interpretation*, 63 U. Chi. L. Rev. 877, 901 (1996). Philosophical discussions about whether considerations of fairness are "subjective" or "objective" can await another day. Here, remanding for a hearing advances both objective fairness (Johnson's claim satisfies cause and prejudice) and subjective fairness (the right thing to do considering what is on the line). In this context, I refer to Johnson's claim of innocence, not as a postconviction legal term of art, but as a factual reality presented by his petition. At this stage, we must accept Williams's affidavit as true; accordingly, we must accept that Johnson did not shoot a gun on the day of the offense. If that turns out to be true after a hearing, he would be, in a literal sense, innocent of the crime for which he sits in prison.

¶ 63   Our decision gives the State the benefit of consideration of all of its arguments, while at the same time giving Johnson an opportunity to prove a claim that calls into question the soundness of his conviction. Given the stakes, fairness impels this result.

¶ 64   JUSTICE MASON, dissenting:

¶ 65   I respectfully dissent from the majority's determination that Johnson has met the cause-and-prejudice test. Because the witness he now claims would testify that he was not one of the shooters was known to him at the time of his trial in 2000, no factor "external to the defense" precluded him from raising this claim earlier. Therefore, he cannot establish cause for his failure to raise his ineffective assistance claim in his first postconviction petition. See *People v. Davis*, 2014 IL 115595, ¶ 14 (" 'Cause' refers to some objective factor external to the defense that impeded counsel's efforts to raise the claim in an earlier proceeding.").[6]

¶ 66   Johnson has elected *not* to pursue his original claim of actual innocence on appeal, and so, as I discuss below, under numerous authorities from our supreme court, he was required to satisfy the cause-and-prejudice test to demonstrate why he was unable to raise his claim regarding Williams' testimony in his initial postconviction petition. Thus, the special concurrence's pronouncement that "[t]he possibility of Johnson's innocence must not be sacrificed at the expense of formalism or judicial economy" (*supra* ¶ 59) both misses the point, because this is not an actual innocence case, and improperly relies on the concurring justice's

---

[6]I must comment on the age of this appeal. The reply brief was filed on November 20, 2018. I received the majority's order on July 18, 2019, scarcely one week before my planned retirement. The author has known for months of my plan to leave the court on July 26 and has also known since February 2019 of my position that this case should be affirmed. Having communicated that position to the author and because no further delay in the disposition of this case is tolerable, I file this dissent without having been afforded the opportunity to conduct as thorough a review of the more than 1300-page record as I typically would have undertaken.

subjective views of what is "fair" as a basis to reverse—a practice that cannot be squared with the authorities from our supreme court that we are bound to follow.

¶ 67        That said, it is obvious that Johnson cannot show cause for his failure to pursue an ineffective assistance claim based on his lawyer's failure to interview a witness whose identity was known at the time of his trial in 2000, over a decade before his successive postconviction petition was filed.

¶ 68        "[A] defendant faces immense procedural default hurdles when bringing a successive postconviction petition. Because successive petitions impede the finality of criminal litigation, these hurdles are lowered only in very limited circumstances. [Citation.] One such basis for relaxing the bar against successive postconviction petitions is where a petitioner can establish 'cause and prejudice' for the failure to raise the claim earlier. *** 'Cause' refers to some objective factor external to the defense that impeded counsel's efforts to raise the claim in an earlier proceeding. 'Prejudice' refers to a claimed constitutional error that so infected the entire trial that the resulting conviction or sentence violates due process. 725 ILCS 5/122-1(f) (West 2012) [citations]. Both prongs must be satisfied for the defendant to prevail." *Id.*

¶ 69        First-stage postconviction petition standards do not apply to successive postconviction petitions. *People v. Smith*, 2014 IL 115946, ¶ 35. Consistent with our supreme court's holdings in *People v. Tidwell*, 236 Ill. 2d 150 (2010), *People v. Pistonbarger*, 205 Ill. 2d 444 (2002), and *People v. Edwards*, 197 Ill. 2d 239 (2001), leave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings.

¶ 70        Johnson's initial postconviction petition was filed in 2003. After counsel was appointed, a supplemental petition was filed on December 20, 2007. In the supplemental petition, postconviction counsel raised an ineffective assistance of trial counsel claim based on counsel's failure to (i) allow Johnson to testify in his own defense and (ii) argue in closing that Johnson should be convicted of second degree murder because his conduct was, according to his inculpatory statement following his arrest, prompted by fear of rival gang members.[7] (The majority does not even mention this dispositive fact.) No claim based on counsel's failure to investigate Williams was raised. But at Johnson's trial, Riley identified Williams as one of the people present at the time of the shooting. Accordingly, by the time he filed his initial postconviction petition in 2003, and certainly by the time his appointed counsel filed the supplemental petition in 2007, Johnson knew that Williams was not called as a witness, and he had the opportunity to ascertain from his defense counsel that she had not investigated what he would say, as she admitted during the course of these proceedings. Accordingly, nothing prevented Johnson from raising this claim in his initial petition. Further, because he was represented by counsel after the petition passed to second stage, nothing prevented postconviction counsel, who did claim trial counsel was ineffective for a number of reasons,

---

[7]In a hearing on the petition, Johnson's postconviction counsel admitted that his trial counsel "did a great job" and the trial court aptly noted that the argument postconviction counsel contended should have been raised—that Johnson fired while acting in self-defense—would have conflicted with the defense Johnson did raise at trial, *i.e.*, that he was not one of the shooters and other witnesses implicated him to exact revenge during a gang war.

from including this issue in the petition. Clearly, if, as Johnson now contends, his trial lawyer was ineffective for failing to investigate this witness, Johnson had available to him the information necessary to include that claim in his initial or supplemental postconviction petition.

¶ 71     *Davis* presented analogous circumstances. There, defendant was convicted in 1993 for murders committed as a 14-year old. He filed his first postconviction petition in 1996. He thereafter filed additional petitions in 1998 and 2002. In an application for leave to file a successive petition in 2011, he attached an affidavit from a witness, Lamont Baxter, notarized in 2010, who claimed, contrary to his grand jury testimony, that he did not see defendant with a gun or hear him say anything about plans to kill everyone at the scene. In his 2011 petition, defendant claimed his counsel was ineffective for failing to present Baxter's testimony at his juvenile transfer hearing. Upholding the dismissal of this claim, our supreme court noted that, in earlier petitions, defendant had raised ineffective assistance claims. Like Johnson here, the defendant in *Davis* claimed that his lawyer's deficient representation was not discovered until his current postconviction counsel spoke to Baxter in 2010. Rejecting this argument, the supreme court stated:

> "Defendant fails to explain why he was unable to discover this allegedly *new* evidence earlier, or raise this or a similar claim in *any* of his earlier postconviction proceedings. A defendant is not permitted to develop the evidentiary basis for a claim [of ineffective assistance] in a piecemeal fashion in successive postconviction petitions, as defendant has attempted to do here. [Citation.]
>
>      *** Baxter's affidavit testimony is not of such character that it could not have been discovered earlier by the exercise of due diligence." (Emphases in original.) *Davis*, 2014 IL 115595, ¶¶ 55-56.

¶ 72     The same analysis applies here and mandates affirmance. Williams's affidavit establishes this beyond argument when he states: "I had not know[n] that Antoine Johnson had been found guilty of murder in connection with these events. *** When I did find out, in early 2014, *I immediately offered assistance*." (Emphasis added.) Because Williams was willing to "immediately" offer assistance upon learning of Johnson's conviction, it is obvious that if he had learned of that conviction in 2003, when Johnson's initial postconviction petition was filed, or in 2007, when the supplemental petition was filed, he would have offered assistance then as well. No factor external to the defense prevented Johnson from raising this claim earlier, and in the words of our supreme court, "[Williams's] affidavit testimony is not of such character that it could not have been discovered earlier by the exercise of due diligence." *Id.* ¶ 56. Because Johnson failed to exercise due diligence in obtaining this evidence, he cannot show cause. Further, because Johnson cannot establish cause for his failure to raise this claim in his 2003 postconviction petition or in his 2007 supplemental petition, we need not consider whether he has established prejudice. *Cf. Smith*, 2014 IL 115946, ¶ 37 (in considering issue of whether defendant was properly denied leave to file successive postconviction petition, declining to address cause where defendant failed to show prejudice).

¶ 73     Directing the circuit court to conduct a third stage evidentiary hearing countermands the statutory bar on Johnson's ineffective assistance claim. See 725 ILCS 5/122-3 (West 2010) ("Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived."); see also *Pitsonbarger*, 205 Ill. 2d at 458 ("In the context of a successive post-conviction petition, *** the procedural bar of waiver is not merely a principle

of judicial administration; it is an express requirement of the statute."). By failing to include this claim in his initial or supplemental postconviction petition, Johnson has forfeited the ability to pursue it in a successive petition, and the dismissal of that petition should be affirmed.